UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                 :

NEIL BINDER,                     :

                  :

           Plaintiff,     :

                  :           22-CV-2528 (VSB)

        - against -      :

                  :        **OPINION & ORDER**

                  :

CAPITAL ONE BANK, N.A.,    :

                  :

          Defendant.   :

                  :

--------------------------------------------------------X

<u>Appearances</u>:

Neil Binder
New York, NY
*Pro se Plaintiff*

Philip A. Goldstein
New York, NY
*Counsel for Defendant*

Scott Elliott Reynolds
Far Hills, NJ
*Counsel for Proposed Intervenor*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       Before me is Defendant's amended motion to dismiss pro se Plaintiff's Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 17), Plaintiff's motion for summary

judgment, (Doc. 20), third-party intervenor's motion to intervene, (Doc. 33), and Plaintiff's

motion for pre-judgment interest, (Doc. 34).  Because I lack jurisdiction over this case pursuant

to the *Rooker-Feldman* doctrine, Defendant's motion to dismiss is GRANTED, and Plaintiff's

Complaint is DISMISSED.  In light of this finding, Plaintiff's motion for summary judgment is

DENIED, third-party intervenor's motion to intervene is DENIED as moot, and Plaintiff's

motion for pre-judgment interest is DENIED.

## I.      **Factual Background**[1]

Pro se Plaintiff Neil Binder ("Plaintiff" or "Binder") is the debtor on a commercial loan owned by Defendant Capital One Bank, N.A. ("Defendant" or "Capital One").  (Compl. ¶ 3.)[2] Defendant issued a Commercial Credit Line Promissory Note to Plaintiff on February 1, 2009 in the amount of $1,150,000, which renewed yearly.  (*Id*. ¶ 6.)  In February 2014, Plaintiff defaulted on the Note, and Defendant subsequently obtained a judgment against Plaintiff in March 2015 ("2015 Judgment").  (*Id*. ¶ 6)  However, due to Plaintiff's deteriorating financial condition, Plaintiff's nonpayment continued until July 2018.  (*Id*. ¶ 7.)  On July 18, 2018, Plaintiff and Defendant entered into a Settlement Agreement, (*Id*. ¶ 7), which required Plaintiff to make monthly payments based on a schedule agreed to by the parties.  (*Id*. ¶ 15.)  The outstanding balance stated in the Settlement Agreement was $578,236.  (*Id*. ¶ 7.)

Third-party FAWBS, Inc. ("FAWBS"), a real estate company that owns various properties in New Jersey, also signed the Settlement Agreement as to specific provisions. (*Id*. ¶¶ 7–8.)[3]  At the time the Settlement Agreement was signed, Plaintiff owned 50% of FAWBS outstanding shares and received monthly distributions from the company's net earnings. (*Id*. ¶ 8.)  Pursuant to the Settlement Agreement, FAWBS was to make payments directly to Capital One rather than disburse funds to Binder.  (*Id*. ¶ 18.)  Capital One would then apply these

---

[1] The facts set forth in this section are derived from Plaintiff's Complaint, (Doc. 1), as well as state court opinions and orders of which I take judicial notice, *see Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (citation omitted)).  I assume the allegations set forth in Plaintiff's Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to Plaintiff's Complaint, filed March 28, 2022.  (Doc. 1.)

[3] Plaintiff's wife, Nina Scerbo, was also a party who executed select provisions of the Settlement Agreement. (*Id*. ¶ 9.)

funds to the amount due under the 2015 Judgment.  (*Id*. ¶ 24.)

During the settlement negotiations, Plaintiff told Defendant that FAWBS expected to receive additional rental income from tenant Paul Miller Auto Group ("Miller") in September 2018.  (*Id*. ¶ 26.)  Given this information, the parties agreed to an increase in the monthly payment to be made to Defendant beginning in October 2018.  (*Id*. ¶ 26.)

However, despite the payment schedule set out in the Settlement Agreement, (*Id*. ¶ 15), by the fall of 2018 Plaintiff failed to make the required payments to Defendant, (*Id*. ¶¶ 31, 33). Plaintiff states that he failed to make the required payments because the tenant Miller, "delayed making the additional rental payments until February 2019."  (*Id*. ¶ 28.)  On December 20, 2018, Defendant sent a default letter to Plaintiff.  (*Id*. ¶ 34.)  However, Plaintiff asserts that he never defaulted on the Settlement Agreement, (*Id*. ¶ 4), arguing that Miller's nonpayment "was of sufficient importance to qualify as a catastrophic event", as defined under the Settlement Agreement, (*Id*. ¶¶ 32, 33.)

According to Plaintiff, Defendant thereafter initiated legal action against FAWBS in the Superior Court of New Jersey (the "New Jersey Litigation"), "seeking to have the Court confirm a default and direct that **all** money Binder would be entitled to receive each month, not merely the amount for the Settlement Agreement, be forwarded directly to Defendant."  (*Id*. ¶ 36.) (emphasis in original).  Since he was never named in the lawsuit, Plaintiff claims that he was "never able to provide any testimony in [his] capacity as the debtor about the events that took place."  (*Id*. ¶ 37.)  The Superior Court of New Jersey granted summary judgment in favor of Capital One, and directed FAWBS to send all future distributions intended for Plaintiff to Capital One instead.  (*Id*. ¶ 37.)  FAWBS complied with the Court's order.  (*Id*. ¶¶ 38, 41.)

## II.   <u>Procedural History</u>

Plaintiff filed the Complaint in this action on March 28, 2022.  (Doc. 1.)  Defendant filed its initial motion to dismiss and supporting papers on June 20, 2022, (Docs. 13–15), and its amended motion to dismiss and supporting papers on June 24, 2022, (Docs. 17–19).

Plaintiff then filed a motion for summary judgment on July 6, 2022, (Doc. 20), along with a response to Defendant's amended motion to dismiss, (Doc. 21).  Defendant filed a reply memorandum of law and declaration in support of its amended motion to dismiss on July 13, 2022.  (Doc. 22–23.)  Defendant also filed a memorandum of law in opposition to Plaintiff's motion for summary judgment, a response to Plaintiff's statement of undisputed material facts, and a declaration on July 20, 2022.  (Doc. 25–27.)  Third-party proposed intervenor FAWBS filed a motion to intervene and supporting papers on August 22, 2023.  (Doc. 33.)  Plaintiff thereafter filed a motion for pre-judgment interest on February 20, 2024, (Doc. 34), and Defendant filed its response to the motion on March 5, 2024, (Doc. 35).

## III.   <u>Legal Standards</u>

### A.   *Subject Matter Jurisdiction and the Rooker-Feldman Doctrine*

Federal district courts are courts of "limited jurisdiction" and must confirm that they have subject matter jurisdiction over matters before them.  *See Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir. 2009) (citation omitted).  "Although neither party has raised a question as to this Court's jurisdiction, . . . 'it is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'"  *Sanders v. New World Design Build, Inc.*, No. 19-CV-1071 (VSB), 2020 WL 1957371, at *1 n.2 (S.D.N.Y. Apr. 23, 2020) (quoting *United Food & Com. Workers Union v. CenterMark Props.*

*Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)); *see also* Fed. R. Civ. P 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Such a determination is a threshold issue. *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry") (internal quotation marks and citation omitted).

"Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc*., 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)). "The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court.'" (*Id*. (quoting *Exxon Mobile Corp.*, 544 U.S. at 283)). "There are four requirements for the application of *Rooker-Feldman*: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites . . . review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id*. (internal quotation marks, alterations, and citation omitted). The first and fourth requirements are "procedural," whereas the second and third are "substantive." *Hoblock v. Albany Cty. Bd. of Election*, 422 F.3d 77, 85 (2d Cir. 2005). "Where all four requirements are met, a district court must dismiss for lack of subject matter jurisdiction." *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 274 (S.D.N.Y. 2018). "[B]ecause *Rooker-Feldman* concerns the Court's subject matter jurisdiction, the Court may address it *sua sponte*[.]" *Wenegieme v. U.S. Bank Nat'l Ass'n*, No. 16-CV-6548 (ER), 2017 WL 1857254, at *8 (S.D.N.Y. May 4, 2017), *aff'd*, 715 F. App'x 65 (2d Cir. 2018).

### B. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks and citation omitted). A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks and citation omitted), including docket sheets, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). *See also Global Network Commc'ns, Inc.*, 458 F.3d at 157 ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." (citation omitted)). A complaint need not make "detailed factual

allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### C. *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and alterations omitted).

### IV. <u>Discussion</u>

Plaintiff argues that Defendant's action in filing a lawsuit against FAWBS in New Jersey Superior Court was contrary to the express language in Section 17(f) of the Settlement Agreement, which directs that all matters relating to the Settlement Agreement must be brought "solely and exclusively" in the State and Federal Courts of New York. (Compl. ¶ 45.) Plaintiff further argues that the Settlement Agreement specifically states that "FAWBS is not liable for the [2015] Judgment and is not a debtor to the Lender". (*Id.* ¶ 46.) Plaintiff maintains that "By

taking an action outside the mandated area of jurisdiction and by filing a motion against

FAWBS, Defendant breached its obligations under the Settlement Agreement." (*Id*. ¶ 47.)

Defendant seeks to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil

Procedure 12(b)(6), and states that Plaintiff "actively participated in the New Jersey Litigation,

but because he is unhappy with the result, he now sues Capital One seeking to undo the New

Jersey state-court judgment." (Def. Mem. 1.)[4]

Before delving into the merits of the Complaint, I must address the application of the

*Rooker-Feldman* doctrine. *See Wenegieme*, 2017 WL 1857254, at *8. Jurisdiction over

Plaintiff's case is barred by the *Rooker-Feldman* doctrine. Regarding the procedural factors,

there is no question that the judgment of which Plaintiff complains was issued prior to the

initiation of this suit, and that Plaintiff lost in the state court proceeding. Specifically, the New

Jersey state court granted Capital One's motion for summary judgment on November 13, 2019,

holding that FAWBS breached the Settlement Agreement, (*see* Goldstein Decl. Ex. G (summary

judgment ruling)),[5] and Plaintiff filed the Complaint in this action on March 28, 2022.

With regard to the substantive factors, Plaintiff's alleged injuries stem from the New

Jersey judgment, and Plaintiff essentially seeks review and rejection of the state court's

judgment. In other words, Plaintiff seeks a reversal of the state court's summary judgment

ruling. Plaintiff "is asking the federal court to determine whether the state judgment" that found

in favor of Defendant Capital One was "wrongfully issued." *Vossbrinck*, 773 F.3d at 427.

Although Plaintiff "insists that the New Jersey Superior Court did not have jurisdiction to hold

---

[4] Def. Mem. refers to the Memorandum of Law in Support of Capital One's Amended Motion to Dismiss Plaintiff's Complaint. (Doc. 18.)

[5] "Goldstein Decl." refers to the Declaration of Philip A. Goldstein in Support of Defendant's Amended Motion to Dismiss, (Doc. 19), and the exhibits thereto.

[Plaintiff] in noncompliance with the Settlement Agreement", (Compl. ¶ 50), the record clearly shows that FAWBS was represented by counsel and that Plaintiff requested to and did provide sworn testimony during the hearing on Capital One's motion for summary judgment.  (*See* Goldstein Decl. Ex. E, at 18:20–21, 19:3–4, 20:7–28:25 (hearing transcript on motion for summary judgment)).  Plaintiff also filed a certification in the New Jersey litigation, arguing that Capital One's claims were frivolous, and made many of the same arguments he makes here.  (*Id*. Ex. F.)  In his certification, Plaintiff admitted that he was "both a 50% Stockholder and Vice President of Defendant [i.e., FAWBS]" and that he "directed [FAWBS] to make no payments to Capital One during the 180-day catastrophe period as provided in the Settlement Agreement section 2(f)."  (*Id*. at ¶ 23.)  Therefore, adjudicating Plaintiff's dispute as to the Settlement Agreement "would require the [me] to review the state proceedings and determine that the . . . judgment was issued in error."  *Vossbrinck*, 773 F.3d at 427.  Indeed, "the injury of which [Plaintiff] 'complains' in [his] claim for relief, and which he seeks to have remedied, is the [November 13, 2019] judgment" entered by the New Jersey Superior Court.  *Id.*

My conclusion is further buttressed by *Boyd v. Wells Fargo Bank, N.A.*, No. 19-CV-4323 (MKB), 2021 WL 1812660 (E.D.N.Y. May 6, 2021), a lawsuit that involved a state court judgment finding in favor of a mortgage lender.  In *Boyd*, the court concluded that Plaintiff's requests for declaratory and injunctive relief were barred by the *Rooker-Feldman* doctrine because "(1) Plaintiff challenge[d] a state court judgment of foreclosure and sale entered on October 17, 2017; (2) the alleged injuries stem[med] from that judgment; (3) Plaintiff [sought] review and rejection of the state court's judgment; and (4) Plaintiff filed the Complaint in [that] action on July 26, 2019, approximately a year and nine months after the State Court issued the judgment of foreclosure and sale."  *Id.* at *6 (citation omitted).  Accordingly, the court found that

it was without jurisdiction to consider the relief the plaintiff sought.

In light of the above, I find that all four of the *Rooker-Feldman* requirements are satisfied.  I therefore cannot exercise jurisdiction over Plaintiff's claims, and must dismiss Plaintiff's Complaint.  Because I do not have jurisdiction over Plaintiff's suit, I do not proceed to consider the merits of Plaintiff's claims.

**V.    <u>Conclusion</u>**

For the foregoing reasons, Defendant's amended motion to dismiss the Complaint is GRANTED, and Plaintiff's Complaint is DISMISSED.  In light of this finding, Plaintiff's motion for summary judgment is DENIED, third-party intervenor's motion to intervene is DENIED as moot, and Plaintiff's motion for pre-judgment interest is DENIED.

The Clerk of Court is respectfully directed to terminate the open motions at Documents 17, 20, 33, and 34, and is further directed to close this case.  The Clerk is further directed to mail a copy of this Opinion & Order to the pro se Plaintiff.

SO ORDERED.

Dated: March 28, 2024
       New York, New York

Vernon S. Broderick
United States District Judge